1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ALAMIN SAMAD,

11              Plaintiff,              No. CIV S-09-3145 JAM DAD P

12        vs.

13   SUSAN L. HUBBARD, et al.,

14              Defendants.            FINDINGS AND RECOMMENDATIONS

15   _____/

16              Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief under 42 U.S.C. § 1983.  This matter is before the court on a motion for summary

18   judgment brought on behalf of defendant Medina pursuant to Rule 56 of the Federal Rules of

19   Civil Procedure.  Plaintiff has filed an opposition to the motion.  Defendant has filed a reply.

20                              **BACKGROUND**

21              Plaintiff is proceeding on his second amended complaint against Physician's

22   Assistant Medina.  Therein, plaintiff alleges as follows.  From 2008 through 2010, defendant

23   Medina failed to provide plaintiff with adequate medical care for his back and ankle conditions.

24   Specifically, defendant Medina discontinued plaintiff's walking cane in June 2008, did nothing

25   to help plaintiff get a "boot brace" after he subsequently injured his ankle, prescribed plaintiff

26   him physical therapy knowing that it previously caused his back injury to worsen, discontinued

                                        1

1   plaintiff's walking cane, waist-chain, and lower-tier chrono in October 2009, and refused to

2   prescribe plaintiff adequate pain medication.  Plaintiff claims that Medina has been deliberately

3   indifferent to his serious medical needs and has retaliated against him.  (Sec. Am. Compl. at 1, 5-

4   7.)

5               **SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

6               Summary judgment is appropriate when it is demonstrated that there exists "no

7   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

8   matter of law."  Fed. R. Civ. P. 56(c).

9               Under summary judgment practice, the moving party
            always bears the initial responsibility of informing the district court
10           of the basis for its motion, and identifying those portions of "the
            pleadings, depositions, answers to interrogatories, and admissions
11           on file, together with the affidavits, if any," which it believes
            demonstrate the absence of a genuine issue of material fact.

12

13   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

14   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

15   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

16   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

17   after adequate time for discovery and upon motion, against a party who fails to make a showing

18   sufficient to establish the existence of an element essential to that party's case, and on which that

19   party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

20   concerning an essential element of the nonmoving party's case necessarily renders all other facts

21   immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

22   whatever is before the district court demonstrates that the standard for entry of summary

23   judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

24               If the moving party meets its initial responsibility, the burden then shifts to the

25   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

26   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

2

establish the existence of this factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the

form of affidavits, and/or admissible discovery material, in support of its contention that the

dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party

need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

1   show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

2   as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

3   'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

**OTHER APPLICABLE LEGAL STANDARDS**

I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

(1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

omits to perform an act which he is legally required to do that causes the deprivation of which

complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the

actions of their employees under a theory of respondeat superior and, therefore, when a named

defendant holds a supervisorial position, the causal link between him and the claimed

constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

(9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

allegations concerning the involvement of official personnel in civil rights violations are not

sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

II.  The Eighth Amendment and Inadequate Medical Care

The unnecessary and wanton infliction of pain constitutes cruel and unusual

punishment prohibited by the Eighth Amendment.  Whitley v. Albers, 475 U.S. 312, 319 (1986);

1  Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

2  In order to prevail on a claim of cruel and unusual punishment, a prisoner must allege and prove

3  that objectively he suffered a sufficiently serious deprivation and that subjectively prison officials

4  acted with deliberate indifference in allowing or causing the deprivation to occur.  Wilson v.

5  Seiter, 501 U.S. 294, 298-99 (1991).

6         Where a prisoner's Eighth Amendment claims arise in the context of medical

7  care, the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence

8  deliberate indifference to serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth

9  Amendment medical claim has two elements:  "the seriousness of the prisoner's medical need

10  and the nature of the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050,

11  1059 (9th Cir. 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133

12  (9th Cir. 1997) (en banc).

13         A medical need is serious "if the failure to treat the prisoner's condition could

14  result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

15  McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical

16  need include "the presence of a medical condition that significantly affects an individual's daily

17  activities."  Id. at 1059-60.  By establishing the existence of a serious medical need, a prisoner

18  satisfies the objective requirement for proving an Eighth Amendment violation.  Farmer v.

19  Brennan, 511 U.S. 825, 834 (1994).

20         If a prisoner establishes the existence of a serious medical need, he must then

21  show that prison officials responded to the serious medical need with deliberate indifference.

22  Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials

23  deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in

24  which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94

25  (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard

26  to medical care, however, "the indifference to his medical needs must be substantial.  Mere

'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."
Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at
105-06).  See also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere
negligence in diagnosing or treating a medical condition, without more, does not violate a
prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate
indifference is "a state of mind more blameworthy than negligence" and "requires 'more than
ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835
(quoting Whitley, 475 U.S. at 319).

Delays in providing medical care may manifest deliberate indifference.  Estelle,
429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in
providing care, a plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d
1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332,
1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v.
Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a]
prisoner need not show his harm was substantial; however, such would provide additional
support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett
v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  See also McGuckin, 974 F.2d at 1060.

Finally, mere differences of opinion between a prisoner and prison medical staff
or between medical professionals as to the proper course of treatment for a medical condition do
not give rise to a § 1983 claim.  Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330,
332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662
F.2d 1337, 1344 (9th Cir. 1981).

III.  The First Amendment and Retaliation

Under the First Amendment, prisoners have a constitutional right to file prison
grievances and pursue civil rights litigation in the courts.  See Rhodes v. Robinson, 408 F.3d
559, 567 (9th Cir. 2005).  Prison officials may not retaliate against prisoners for doing so.  See id.

at 568.  In this regard, the Ninth Circuit has explained:

> Within the prison context, a viable claim of First Amendment
> retaliation entails five basic elements: (1) An assertion that a state
> actor took some adverse action against an inmate (2) because of (3)
> that prisoner's protected conduct, and that such action (4) chilled
> the inmate's exercise of his First Amendment rights, and (5) the
> action did not reasonably advance a legitimate correctional goal.

Id. at 567-68.

## DEFENDANT MEDINA'S MOTION FOR SUMMARY JUDGMENT

I. Defendant Medina's Statement of Undisputed Facts and Evidence

Defendant Medina's statement of undisputed facts is supported by citations to his own declaration signed under penalty of perjury and by citations to plaintiff's medical records.  It is also supported by references to the transcript of plaintiff's deposition.

The evidence submitted by defendant Medina establishes the following.  At all relevant times, defendant Medina was a licensed physician's assistant at High Desert State Prison.  Defendant Medina, along with several other medical providers, treated plaintiff for a variety of medical conditions.  (Def.'s SUDF 1-4, Medina Decl. & Ex. A.)

By way of background, in 2005, plaintiff had a laminectomy.  A laminectomy is a spine operation performed to remove a portion of the vertebral bone to alleviate pain.  On October 23, 2007, a medical doctor submitted an accommodation chrono so that plaintiff could use a cane, mobility vest, and waist chain.  If a medical doctor determines that an inmate needs an accommodation for a medical condition, the doctor may submit an accommodation chrono to allow the inmate to obtain specific medical equipment or special living conditions.  The institution's Health Care Manager ("HCM") or Chief Medical Officer ("CMO") must approve any accommodation chrono.  On October 25, 2007, plaintiff's accommodation chrono was approved.  The chrono also notes that plaintiff had a DNM designation.  A DNM designation indicates that an inmate is mobility impaired due to an orthopedic, neurologic, or medical

/////

1   condition that substantially limits his ability to ambulate over 100 yards with or without assistive

2   devices.  (Def.'s SUDF 5-12, Medina Decl. & Ex. A.)

3          On March 3, 2008, prison staff reported seeing plaintiff engaged in physical

4   activity "not congruent with being mobility impaired."  Specifically prison staff observed

5   plaintiff shadowboxing and punching a big bag on the yard.  (Def.'s SUDF 13-14, Medina Decl.

6   & Ex. A.)

7          On April 30, 2008, plaintiff went to the orthopedic clinic complaining of lower-

8   back pain and saw Dr. Arraiz, a physiatrist, for treatment.[1]  Dr. Arraiz noted that plaintiff was

9   currently taking Motrin and recommended physical therapy to determine if the physical therapists

10  could work on stabilizing plaintiff's back.  Dr. Arraiz also recommended an MRI of plaintiff's

11  spine and referred him to receive the MRI that same day.  (Def.'s SUDF 15-18 & 47-48, Medina

12  Decl. & Ex. A.)

13         From April 2008 through July 2008, Plaintiff reported that he had chronic lower

14  back pain and was prescribed aspirin and naproxen for pain.  Naproxen is a nonsteroidal anti-

15  inflammatory drug used to treat pain and inflammation.  Nonsteroidal anti-inflammatories such

16  as ibuprofen and naproxen are commonly prescribed for patients with chronic back pain.  In

17  addition, on June 4, 2008, and June 16, 2008, plaintiff received physical therapy for his back.

18  (Def.'s SUDF 15-19, Medina Decl. & Ex. A.)

19         On June 18, 2008, Officer Lasky observed plaintiff again utilizing the heavy bag

20  on D yard.  Specifically, Officer Lasky observed plaintiff vigorously working out on the heavy

21  bag and noticed plaintiff's cane laying on the ground approximately eight feet away from the

22  location of the bag.  According to the officer, plaintiff's hand, food, and body movements were

23  coordinated.  Officer Lasky watched plaintiff punch the bag for approximately twenty minutes.

24

25         [1] Physiatry, also called physical medicine and rehabilitation, is a branch of medicine that
    specializes in diagnosis, treatment, and management of various neurological and musculoskeletal
    injuries.  Physiatrists specialize in a wide variety of conservative (non-surgical) treatments for
26  sports injuries and spine-related problems.

1   Several other correctional staff members also observed plaintiff using the bag.  (Def.'s SUDF 20-

2   28, Medina Decl. & Ex. A.)

3                Turning to defendant Medina's involvement in plaintiff's medical care, on June

4   19, 2008, defendant Medina saw plaintiff for his lower back pain.  Defendant Medina noted that

5   plaintiff was mobility-impaired and had a medically-provided cane for assistance.  He also noted

6   that, on June 18, 2008, Officer Lasky, Officer Korton, and Nurse Mitchell observed plaintiff

7   vigorously punching the yard bag, moving around, and in a fighting stance without any apparent

8   impaired movement.  Defendant Medina examined plaintiff and determined that he had full range

9   of motion.  Based on staff observations and defendant Medina's examination of plaintiff,

10  defendant Medina discontinued plaintiff's cane use and referred him to physical therapy for

11  evaluation and treatment.  Defendant Medina allowed plaintiff to retain his mobility-impaired

12  vest, which is provided to inmates who have medical conditions that make it difficult to ambulate

13  over long distances.  (Def.'s SUDF 29-35, Medina Decl. & Ex. A.)

14               On June 30, 2008, plaintiff participated in physical therapy.  During that session,

15  plaintiff ambulated approximately thirty feet without an assistive device.  Plaintiff admitted that

16  he had not fallen or had an incident since the beginning of his physical therapy sessions, but he

17  expressed that he would like a cane in case his lower back gave out.  Plaintiff tolerated physical

18  therapy well and was making progress at the time.  On July 1, 2008, the physical therapist

19  determined that plaintiff did not need a cane for ambulation and that he would continue to work

20  with plaintiff on strengthening his back.  Plaintiff again participated in physical therapy on June

21  30, 2008, July 1, 2008, and July 16, 2008.  (Def.'s SUDF 36-42, Medina Decl. & Ex. A.)

22               On August 27, 2008, plaintiff underwent an MRI of his lower spine.  From

23  October 1, 2008, through November 3, 2008, defendant Medina prescribed plaintiff

24  acetaminophen with codeine to take twice a day for any pain associated with his back.

25  Acetaminophen with codeine is a narcotic pain reliever.  (Def.'s SUDF 43-45, Medina Decl. &

26  Ex. A.)

1    On October 8, 2008, plaintiff saw Dr. Arraiz again.  Dr. Arraiz recommended that

2  plaintiff receive a selective steroid nerve block for his back pain.  A selective nerve root block is

3  a procedure that anesthetizes an individual nerve root, either within the neck (cervical) or in the

4  back (thoracic or lumbar), thought to be responsible for the patient's pain.  Based on Dr. Arraiz's

5  recommendation, nurse French submitted a request for plaintiff to receive the selective nerve root

6  block.  (Def.'s SUDF 46, 49-52, Medina Decl. & Ex. A.)

7    On October 9, 2008, plaintiff claimed that he fell and injured his right ankle.  The

8  following day, defendant Medina prescribed plaintiff a 180-day supply of naproxen to take for

9  pain twice a day.  Defendant Medina authorized plaintiff to keep the naproxen on his person.  On

10  October 13, 2008, plaintiff returned to the medical clinic and reported that he fell and felt a crack

11  in his ankle.  Medical personnel prescribed plaintiff ibuprofen to take three times a day for 100

12  days and authorized him to keep it on his person.  Medical staff also ordered an x-ray of

13  plaintiff's ankle and submitted a chrono request for crutches.  On October 14, 2008, plaintiff's

14  ankle was x-rayed and no fracture was shown.  On November 5, 2008, plaintiff's accommodation

15  chrono was approved.  (Def.'s SUDF 47-62, Medina Decl. & Ex. A.)

16    On October 18, 2008, medical personnel saw plaintiff in the prison medical clinic.

17  On the same evening, plaintiff was transported to Banner Lassen Medical Center for an

18  ultrasound of his left leg.  Venous ultrasound imaging, or sonography, is a diagnostic test used to

19  check the circulation in the large veins of the legs.  Such an exam would show any blockage in

20  the veins by a blood clot or thrombus formation.  Venous thrombosis, sometimes called phlebitis,

21  is a blood clot in a deep vein resulting in partial or complete blockage of blood flow in that vein.

22  Based on that ultrasound, the treating physician found that there was no evidence of deep venous

23  thrombosis in plaintiff's left leg.  (Def.'s SUDF 63-68, Medina Decl. & Ex. A.)

24    As of October 19, 2008, plaintiff was receiving Tylenol with codeine and was to

25  use it for three more days and then take ibuprofen three times a day for the next thirty days.

26  Plaintiff was also to have a follow-up appointment within three to five days.  On October 21,

2008, plaintiff went to the prison medical clinic complaining of ankle pain.  A nurse reviewed his

x-rays and opined that plaintiff had in fact fractured his ankle.  She ordered a splint for plaintiff.

Defendant Medina also treated plaintiff on the same day.  Based on information obtained from

the nurse and based on his examination, defendant Medina submitted a request for plaintiff to see

an orthopedic specialist.  Defendant Medina also prescribed Tylenol with codeine for plaintiff to

be taken twice a day for fourteen days.  (Def.'s SUDF 69-76, Medina Decl. & Ex. A.)

On October 24, 2008, plaintiff saw defendant Medina as part of the inmate

appeals process, and they discussed plaintiff's claim that he was not receiving adequate medical

care at the prison.  Defendant Medina reminded plaintiff that he recently saw orthopedics

regarding his back and reviewed plaintiff's MRI results with him.  Defendant Medina then noted

that plaintiff had a referral to see an orthopedic surgeon for his suspected ankle fracture.  Plaintiff

indicated that he understood and agreed to the treatment plan.  Defendant Medina told plaintiff to

alert staff if his symptoms worsened or if they failed to improve.  (Def.'s SUDF 77-81, Medina

Decl. & Ex. A.)

On October 28, 2008, plaintiff saw an orthopedic surgeon for evaluation of his

ankle.  At that time the surgeon diagnosed plaintiff as suffering with an ankle sprain and

recommended that plaintiff wear a boot brace for three weeks as needed.  On the following day,

medical personnel at the prison ordered a boot brace for plaintiff and ordered a follow-up

appointment for him.  Nurse French also submitted an accommodation chrono for plaintiff to

have a boot brace for one month.  (Def.'s SUDF 82-87, Medina Decl. & Ex. A.)

On November 4, 2008, plaintiff saw defendant Medina again regarding his

mobility concerns.  At the time of this appointment, plaintiff was in a wheelchair and was

satisfied with his medical treatment.  On November 5, 2008, plaintiff was prescribed an UNNA

boot.  An UNNA boot is a special gauze bandage that can be used to support sprains and strains

of the foot, ankle, and lower leg.  Plaintiff did not need a hard boot brace while he was using the

wheelchair because he was not placing weight on his foot or ankle.  On November 17, 2008,

11

plaintiff's authorization for a wheelchair was discontinued and he received a walking cane for one week.  On November 18, 2008, medical personnel applied an ace wrap to plaintiff's ankle. (Def.'s SUDF 88-95, Medina Decl. & Ex. A.)

On December 2, 2008, Dr. Nepomuceno removed plaintiff from the DNM program.  An inmate taken off DNM typically does not need an assistive device to ambulate.  On December 4, 2008, plaintiff saw Dr. Arraiz again and received a selective nerve root block on his lower back.  On December 17, 2008, and April 13, 2009, plaintiff received refills for his aspirin and ibuprofen.  (Def.'s SUDF 96-99, Medina Decl. & Ex. A.)

On July 2, 2009, defendant Medina submitted a request for plaintiff to receive physical therapy and for plaintiff to receive a TENS unit for his lower back.  TENS stands for Transcutaneous Electrical Nerve Stimulation, which is used predominately for nerve related pain conditions.  It is a non-invasive, safe nerve stimulation intended to reduce pain, both acute and chronic.  (Def.'s SUDF 100-102, Medina Decl. & Ex. A.)

On July 3, 2009, plaintiff saw defendant Medina again and complained he was experiencing increased pain in his back and that his ankle swelled in the evenings.  Plaintiff agreed to try TENS and to alert staff if his symptoms became worse or failed to improve.  On July 5, 2009, defendant Medina signed an accommodation chrono for plaintiff to receive a cane, mobility vest, and bottom bunk for one year.  On July 7, 2009, the accommodation chrono was approved.  (Def.'s SUDF 103-106, Medina Decl. & Ex. A.)

According to his medical records, plaintiff received ibuprofen from June 17, 2009, through August 11, 2009.  On October 6, 2009, plaintiff saw nurse Shaw.  During that medical visit, plaintiff stated that he only wanted his ibuprofen re-ordered and to see a doctor.  On October 9, 2009, plaintiff saw defendant Medina.  Plaintiff informed defendant Medina that he had tried all non-narcotic medications and that only narcotic medications worked for him. Defendant Medina noted that plaintiff had received an epidural injection as Dr. Arraiz recommended, but plaintiff indicated that the pain did not improve after the injection.  Defendant

Medina suggested that plaintiff try a short course of narcotic pain medication to see if it would improve his symptoms.  During his visit with plaintiff, defendant Medina noted that plaintiff did not exhibit pain or discomfort and that plaintiff was not applying weight on his cane while he was ambulating.  Defendant Medina rescinded plaintiff's cane chrono and prescribed him ibuprofen and Tylenol with codeine for two weeks.  Defendant Medina then extended plaintiff's prescription for Tylenol with codeine through October 31, 2009.  On November 5, 2009, plaintiff's prescription for ibuprofen was also refilled.  (Def.'s SUDF 107-118, Medina Decl. & Ex. A.)

On January 13, 2010, the physical therapist discontinued plaintiff's physical therapy sessions because plaintiff was "not agreeable" to treatment.  At his deposition plaintiff testified that he did not participate in the physical therapy defendant Medina prescribed and believed that the physical therapy had failed.  (Def.'s SUDF 119-121, Medina Decl. & Ex. A, Pl's. Dep.)

On February 26, 2010, defendant Medina saw plaintiff because plaintiff had refused to relinquish his cane.  The defendant informed plaintiff that he no longer needed the cane because he did not weight bear upon it while ambulating.  Officer Barker then escorted plaintiff back to his cell without his cane.  Plaintiff walked without affected gait or any problem at that time.  (Def.'s SUDF 122-124, Medina Decl. & Ex. A.)

On March 12, 2010, defendant Medina submitted an accommodation chrono for plaintiff to receive a mobility vest and a TENS unit for one year.  On March 16, 2010, the mobility vest was approved.  On March 12, 2010, plaintiff's prescription for ibuprofen was refilled, and on March 15, 2010, his prescription for aspirin was refilled.  On March 29, 2010 and April 13, 2010, defendant Medina refilled plaintiff's ibuprofen prescription.  (Def.'s SUDF 125-128, Medina Decl. & Ex. A.)

On April 22, 2010, Officer Monk submitted an information chrono after he saw plaintiff take off his mobility vest on the yard and start playing basketball with other inmates.  At

1    that time Officer Monk saw plaintiff dribble, jog, and take two jump shots from the three-point

2    line as he watched plaintiff play basketball for fifteen minutes.  (Def.'s SUDF 129-132, Medina

3    Decl. & Ex. A.)

4            On April 26, 2010, defendant Medina saw plaintiff for a chrono revision because,

5    as noted above, prison staff had observed plaintiff take off his mobility vest and play basketball.

6    At that time plaintiff's mobility vest was discontinued, but his ibuprofen was refilled that same

7    day.  (Def.'s SUDF 133-135, Medina Decl. & Ex. A.)

8            Finally, defendant Medina denies that he ever retaliated against plaintiff for any

9    reason, including for filing inmate grievances regarding his medical treatment.  (Def.'s SUDF

10   136, Medina Decl. & Ex. A.)

11   II.  Defendant Medina's Arguments

12           Defense counsel argues that defendant Medina is entitled to summary judgment in

13   his favor on all of plaintiff's claims because there is no evidence before the court indicating that

14   defendant Medina was deliberately indifferent to plaintiff's medical needs or that he retaliated

15   against plaintiff.  First, counsel contends that the evidence establishes that defendant Medina

16   discontinued plaintiff's cane in June 2008 because plaintiff's own actions demonstrated that he

17   had no medical need for the cane.  Second, counsel contends that the evidence establishes that

18   defendant Medina did not delay, deny, or interfere with plaintiff obtaining a boot brace because

19   although plaintiff did not receive the boot brace at the prison, he did receive a wheelchair and

20   expressed satisfaction with it to defendant Medina.  Third, counsel contends that there is no

21   evidence that defendant Medina prescribed plaintiff physical therapy knowing that it would make

22   his spinal injury worse.  In fact, according to counsel, plaintiff's medical records indicate that

23   physical therapy previously helped him.  Fourth, counsel contends that the evidence establishes

24   that defendant Medina discontinued plaintiff's chrono for a walking cane in October 2009

25   because after he examined plaintiff the defendant noticed that plaintiff was not applying weight

26   on the cane while ambulating.  Fifth, counsel argues that there is no indication that defendant

14

Medina failed to prescribe plaintiff with adequate pain medication.  In this regard, counsel notes

that the evidence reflects the defendant prescribed plaintiff narcotic pain medication in addition

to non-narcotic pain medication.  Finally, defense counsel contends that there is no evidence that

defendant Medina took any adverse action against plaintiff or retaliated against him in any way.

(Def.'s Mem. of P. & A. at 13-19.)

III.  Plaintiff's Opposition

Plaintiff's opposition to defendant's motion for summary judgment is supported

by his own declaration signed under penalty of perjury.  Plaintiff argues that defendant Medina is

not entitled to summary judgment in his favor because defendant's truthfulness is in question.

Plaintiff also argues that defendant Medina has failed to address two central elements of his

complaint.  First, plaintiff contends that it is undisputed that on October 28, 2008, prison officials

granted his inmate appeal and acknowledged that he was not receiving adequate medical care

from defendant Medina.  Second, it appears plaintiff contends that prison officials failed to

interview plaintiff in response to his filing of an inmate appeal, which was necessary to

determine the extent of defendant Medina's alleged misconduct.  Finally, plaintiff maintains that

prison officials granted his inmate appeals upholding his claims of inadequate medical care but

never fulfilled his requests for relief.  (Pl.'s Opp'n to Def.'s Mot. for Summ. J. 2-5 & Pl'.s Decl.)

IV.  Defendant Medina's Reply

In reply, defense counsel contends that plaintiff cannot oppose summary judgment

by raising grounds not placed at issue by the operative pleadings.  Moreover, counsel argues that

insofar as plaintiff contends that he filed an inmate grievance but was never interviewed,

defendant Medina did in fact interview plaintiff and granted his inmate appeal.  Finally, defense

counsel reiterates that there is no evidence before the court that defendant Medina failed to

provide plaintiff with adequate medical treatment.  Rather, according to defense counsel,

plaintiff's own medical records demonstrate that defendant Medina consistently treated plaintiff

for almost two years and adequately responded to all of his medical needs.  (Def.'s Reply at 2-3.)

**ANALYSIS**

I.  <u>Plaintiff's Eighth Amendment Claim</u>

            A.  <u>Plaintiff's Serious Medical Needs</u>

         As an initial matter, the parties do not appear to dispute and the undersigned finds that based upon the evidence presented by the parties in connection with the pending motion a reasonable juror could conclude that plaintiff's back condition and ankle injury constitute objective, serious medical needs.  <u>See</u> <u>McGuckin</u>, 974 F.2d at 1059-60 ("The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment."); <u>Canell v. Bradshaw</u>, 840 F. Supp. 1382, 1393 (D. Or. 1993) (the Eighth Amendment duty to provide medical care applies "to medical conditions that may result in pain and suffering which serve no legitimate penological purpose."). Specifically, plaintiff's largely undisputed medical history as well as the observations and treatment recommendations by defendant Medina, other prison medical personnel, and outside specialists compel the conclusion that plaintiff's medical conditions, if left untreated, could result in "further significant injury" and the "unnecessary and wanton infliction of pain." <u>McGuckin</u>, 974 F.2d at 1059.  Accordingly, resolution of defendant Medina's motion for summary judgment hinges on whether, based upon the evidence before the court on summary judgment, a rationale jury could conclude that the defendant responded to plaintiff's serious medical needs with deliberate indifference.  <u>See</u> <u>Farmer</u>, 511 U.S. at 834; <u>Estelle</u>, 429 U.S. at 106.

        B.  <u>Defendant Medina's Response to Plaintiff's Serious Medical Needs</u>

     The court finds that defendant Medina has borne his initial responsibility of demonstrating that there is no genuine issue of material fact with respect to the adequacy of the medical care provided to plaintiff.  As noted above, plaintiff alleges that defendant Medina failed to provide him with adequate medical care when the defendant discontinued plaintiff's walking

cane in June 2008, did nothing to help plaintiff get a "boot brace" after he injured his ankle, maliciously prescribed him physical therapy knowing that physical therapy previously caused plaintiff's back injury to worsen, discontinued plaintiff's walking cane, waist-chain, and lower-tier chrono in October 2009, and refused to prescribe plaintiff adequate pain medication. Defendant's evidence establishes the contrary in every respect.

As to plaintiff's allegations that defendant Medina discontinued his walking cane in June 2008, defendant's evidence demonstrates that the defendant discontinued plaintiff's cane because plaintiff had no medical need for it. Correctional staff saw plaintiff on the yard engaged in vigorous physical activity on June 18, 2008, without his cane, and defendant Medina observed that plaintiff had full range of motion during his physical examination on June 19, 2008. Plaintiff's physical therapist also confirmed on July 30, 2008, that plaintiff did not need a cane. (Medina Decl. & Ex. A.)

As to plaintiff's allegations that the defendant did nothing to obtain him a boot brace, defendant's evidence demonstrates that plaintiff did not need a boot brace because the prison had issued him a wheelchair. Moreover, when defendant Medina saw plaintiff regarding his mobility concerns, plaintiff expressed satisfaction with the wheelchair. In addition, even after plaintiff's wheelchair was discontinued, plaintiff received an UNNA brace, an ace wrap, and a walking cane. (Medina Decl. & Ex. A.)

As to plaintiff's allegations that defendant Medina prescribed him physical therapy knowing that it would make his spinal injury worse, defendant's evidence demonstrates that in 2008 plaintiff tolerated the physical therapy well and was making progress. For example, during one of his sessions, he ambulated approximately thirty feet without an assistive device. In 2009, plaintiff did not participate in the physical therapy defendant Medina had prescribed, and the physical therapist discontinued the sessions only because plaintiff was "not agreeable" to physical therapy. (Medina Decl. & Ex. A & Pl.'s Dep.)

/////

17

1    As to plaintiff's allegations that defendant Medina discontinued his chrono for a

2    cane, waist-chain, and lower-tier placement in October 2009, the defendant's evidence

3    demonstrates that defendant Medina discontinued plaintiff's cane after he examined plaintiff and

4    noticed that he was not applying weight on the cane while ambulating.  On February 26, 2010,

5    defendant Medina saw plaintiff because he had refused to relinquish his cane; as plaintiff was

6    escorted back to his cell without his cane, he walked without affected gait or problems.  (Medina

7    Decl. & Ex. A.)

8    Finally, as to plaintiff's allegations that defendant Medina failed to prescribe him

9    adequate pain medication, defendant's evidence demonstrates that he repeatedly prescribed and

10   refilled plaintiff's prescriptions for both non-narcotic and narcotic medication over the course of

11   nearly two years.  Plaintiff's doctors and other medical personnel appeared to agree with

12   defendant Medina's prescriptions and they never prescribed plaintiff any different or stronger

13   medications.  (Medina Decl. & Ex. A.)

14   Given the evidence submitted by defendant Medina in support of the pending

15   motion for summary judgment, the burden shifts to plaintiff to establish the existence of a

16   genuine issue of material fact with respect to his inadequate medical care claims.  As noted

17   above, to demonstrate a genuine issue, the opposing party "must do more than simply show that

18   there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole

19   could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue

20   for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

21   Here, the court has considered plaintiff's opposition to the pending motion for

22   summary judgement and his amended complaint.  On defendant's motion for summary judgment,

23   the court is required to believe plaintiff's evidence and draw all reasonable inferences from the

24   facts before the court in plaintiff's favor.  Drawing all reasonable inferences in plaintiff's favor,

25   the court concludes that plaintiff has not submitted sufficient evidence to create a genuine issue

26   /////

1   of material fact with respect to his claim that defendant Medina responded to his serious medical

2   needs with deliberate indifference.  See Farmer, 511 U.S. at 834; Estelle, 429 U.S. at 106.

3          Specifically, in his opposition to defendant's motion for summary judgment,

4   plaintiff contends that the court should deny the pending motion because defendant Medina has

5   failed to address two components of his complaint.  First, plaintiff contends that, on October 28,

6   2008, prison officials granted his inmate appeal and acknowledged that he was not receiving

7   adequate medical care from defendant Medina.  The court has reviewed Dr. Nepomuceno's

8   response to this inmate appeal filed by plaintiff.  Although Dr. Nepomuceno granted plaintiff's

9   inmate appeal, his response thereto does not indicate that defendant Medina provided plaintiff

10  with inadequate medical care.  Quite the contrary.  In his response to the inmate appeal Dr.

11  Nepomuceno states that, during plaintiff's interview with defendant Medina, defendant Medina

12  provided plaintiff  with a referral for orthopedics for his ankle as well as other unrelated referrals

13  and medical treatment and that plaintiff was satisfied with the outcome of that treatment.  (Sec.

14  Am. Compl. Ex. A.)

15         Plaintiff also appears to contend that prison officials failed to conduct an

16  interview with him in response to his inmate appeal and that such an interview was necessary to

17  determine defendant Medina's misconduct.  Plaintiff's argument in this regard is vague and

18  unclear.  Insofar as plaintiff is claiming he was not interviewed in response to Appeal No. HDSP-

19  31-09-12059, the evidence before the court demonstrates that defendant Medina did in fact

20  interview plaintiff in connection with that inmate appeal.  In any event, even if plaintiff had not

21  received an interview, that has no bearing on the evidence submitted by defendant Medina in

22  support of the pending motion for summary judgment.

23         Liberally construing plaintiff's second amended complaint as well as his

24  opposition to defendant's motion for summary judgment, plaintiff's primary contention is that

25  defendant Medina was deliberately indifferent to plaintiff's medical needs in connection with his

26  back and ankle conditions.  However, plaintiff is advised that, as a matter of law, a mere

19

difference of opinion between a prisoner and prison medical staff as to the proper course of medical care does not give rise to a § 1983 claim. Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332; Sanchez, 891 F.2d at 242; Franklin, 662 F.2d at 1344; see also Estelle, 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not constitute cruel and unusual punishment."); Fleming v. Lefevere, 423 F. Supp. 2d 1064, 1070 (C.D. Cal. 2006) ("Plaintiff's own opinion as to the appropriate course of care does not create a triable issue of fact because he has not shown that he has any medical training or expertise upon which to base such an opinion.").

Here, plaintiff has come forward with no evidence showing that the course of treatment defendant Medina chose for him was medically unacceptable under the circumstances or that defendant Medina chose the particular course of treatment in conscious disregard of an excessive risk to plaintiff's health. Farmer, 511 U.S. at 837. Accordingly, defendant Medina's motion for summary judgment with respect to plaintiff's Eighth Amendment claim based upon the medical treatment plaintiff received for his back and ankle should be granted.

II. Plaintiff's First Amendment Retaliation Claim

The court finds that defendant Medina has also borne his initial responsibility of demonstrating that there is no genuine issue of material fact with respect to plaintiff's retaliation claim. As noted above, plaintiff alleges that defendant Medina retaliated against him by withholding adequate medical care from him, specifically, the withholding of pain management treatment. Again, defendant's evidence establishes the contrary.

Defendant's evidence demonstrates that he never refused to see plaintiff and never took any adverse action against plaintiff for filing an inmate appeal. That evidence also establishes that defendant Medina repeatedly prescribed and refilled plaintiff's prescriptions for both non-narcotic and narcotic medication over the course of nearly two years. Plaintiff's doctors and other medical personnel also appeared to agree with defendant Medina's prescriptions since they never prescribed him any different or stronger medication. Defendant

20

1    Medina also referred plaintiff to specialists, prescribed him physical therapy, and submitted

2    accommodation chronos on plaintiff's behalf in an attempt to address plaintiff's alleged chronic

3    pain. (Medina Decl. & Ex. A.)

4         Given the evidence submitted by defendant Medina in support of the pending

5    motion for summary judgment, the burden shifts to plaintiff to establish the existence of a

6    genuine issue of material fact with respect to his retaliation claim. Here, viewing the facts in the

7    light most favorable to plaintiff, plaintiff has not provided the court with any competent evidence

8    demonstrating that defendant Medina withheld medical care from him based on his filing of an

9    inmate appeal. See Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on

10   personal knowledge, set out facts that would be admissible in evidence, and show that the affiant

11   is competent to testify on the matters stated."); Jones v. Blanas, 393 F.3d 918, 923 (9th Cir.

12   2004) (court may consider as evidence in opposition to a motion for summary judgment a pro se

13   plaintiff's contentions when they are based on personal knowledge and set forth facts that would

14   be admissible in evidence).

15        Specifically, a viable retaliation claim requires, in part, that plaintiff point to some

16   evidence demonstrating causation. Here, plaintiff has failed to point to any evidence suggesting

17   that defendant Medina's actions were substantially motivated by or because of plaintiff's

18   protected conduct. Throughout his second amended complaint and deposition testimony,

19   plaintiff contends that defendant Medina made certain adverse medical decisions after plaintiff

20   filed his inmate appeal and therefore that defendant Medina must have been retaliating against

21   him. However, plaintiff's contentions are supported only by sheer speculation. Speculation is

22   not probative evidence indicating the crucial link between his filing of an inmate appeal and

23   defendant Medina's decisions regarding medical treatment. A retaliation claim cannot rest on the

24   logical fallacy of *post hoc, ergo propter hoc*, literally, "after this, therefore because of this." See

25   Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2000). Moreover, as discussed above, in

26   response to plaintiff's inmate appeal defendant Medina conducted an interview with plaintiff and

1   provided him with a referral for orthopedics for his ankle as well as other unrelated referrals and

2   medical treatment.  Defendant Medina thereafter continued to treat plaintiff on several occasions.

3   This evidence refutes plaintiff's claim of retaliation.

4          For all of the foregoing reasons, defendant Medina's motion for summary

5   judgment with respect to plaintiff's First Amendment retaliation claim should be granted.

6                                  **OTHER MATTERS**

7          Not long after this court ordered service of plaintiff's second amended complaint

8   on defendants, plaintiff filed a supplemental complaint, attempting to state a cognizable claim

9   against Susan Hubbard, Director of the Division of Adult Institutions, for the third time.  (Doc.

10  No. 22.)  Plaintiff mentions in his opposition to the pending motion for summary judgment that

11  the court has not addressed his supplemental complaint.  The court will do so now.

12         Once again, in his supplemental complaint, plaintiff has failed to state a

13  cognizable claim against Director Hubbard.  Therein, plaintiff alleges that Director Hubbard

14  failed to properly process and respond to plaintiff's inmate appeal and is liable for all of the

15  injuries plaintiff complains of in his inmate appeal with respect to his medical care.  As the court

16  previously advised plaintiff, prison officials are not required under federal law to process inmate

17  grievances in a specific way or to respond to them in a favorable manner.  It is well established

18  that "inmates lack a separate constitutional entitlement to a specific prison grievance procedure."

19  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640

20  (9th Cir. 1988)).  See also, e.g., Wright v. Shannon, No. CIV F-05-1485 LJO YNP PC, 2010 WL

21  445203 at *5 (E.D. Cal. Feb. 2, 2010) (plaintiff's allegations that prison officials denied or

22  ignored his inmate appeals failed to state a cognizable claim under the First Amendment);

23  Walker v. Vazquez, No. CIV F-09-0931 YNP PC, 2009 WL 5088788 at *6-7 (E.D. Cal. Dec. 17,

24  2009) (plaintiff's allegations that prison officials failed to timely process his inmate appeals

25  failed to a state cognizable under the Fourteenth Amendment); Towner v. Knowles, No. CIV S-

26  08-2833 LKK EFB P, 2009 WL 4281999 at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff's allegations

1   that prison officials screened out his inmate appeals without any basis failed to indicate a

2   deprivation of federal rights).

3           Moreover, § 1983 requires that there be an actual connection or link between the

4   actions of the defendant and the deprivation alleged to have been suffered by plaintiff.  See

5   Monell v. Department of Social Servs. , 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

6   (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

7   meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

8   omits to perform an act which he is legally required to do that causes the deprivation of which

9   complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  The Ninth Circuit has

10  recently reaffirmed that a supervisory defendant may be held liable under § 1983 only "'if there

11  exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a

12  sufficient causal connection between the supervisor's wrongful conduct and the constitutional

13  violation.'"  Starr v. Baca, __ F.3d __, ___, 2011 WL 2988827, at *4 (9th Cir. July 25, 2011)

14  (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)).

15          In his supplemental complaint, plaintiff has not alleged that Director Hubbard was

16  personally involved in the alleged constitutional deprivations which are the subject of his

17  complaint.  Nor has plaintiff alleged a sufficient causal connection between Director Hubbard's

18  conduct and any alleged constitutional violation.

19                                      **CONCLUSION**

20          Accordingly, IT IS HEREBY RECOMMENDED that:

21          1.  Defendant Medina's motion for summary judgment (Doc. No. 37) be granted;

22          2.  Plaintiff's supplemental complaint (Doc. No. 22) be dismissed; and

23          3.  This action be closed.

24          These findings and recommendations are submitted to the United States District

25  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

26  one days after being served with these findings and recommendations, any party may file written

1  objections with the court and serve a copy on all parties.  Such a document should be captioned

2  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

3  shall be served and filed within seven days after service of the objections.  The parties are

4  advised that failure to file objections within the specified time may waive the right to appeal the

5  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

6  DATED: September 7, 2011.

_____

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
sama3145.157

24